UNITED STATES DISTRICT COURT
NORTHERN DISTRICT INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | UNDER SEAL<br>CAUSE NO.: 2:18-CR-61-3-TLS |
| TANISHA A. BANKS | |

## OPINION AND ORDER

This matter is before the Court on Defendant Tanisha A. Banks' Objection to the Final Presentence Investigation Report (PSR), as set forth in the Addendum to the Final Presentence Investigation Report [ECF No. 134]. The Defendant, who is awaiting sentencing, was found guilty by a jury of one count of Conspiracy to Rob Mail, Money or Other Property of the United States in violation of 18 U.S.C. § 371 and one count of Robbery of Mail, Money or Other Property of the United States in violation of 18 U.S.C. § 2114(a). The two convictions carry a maximum penalty of five years imprisonment and ten years imprisonment, respectively. The sole issue before the Court is whether the Defendant's objection to the adjustment increasing her sentencing offense level for the abuse of a position of trust pursuant to Sentencing Guideline § 3B1.3, which is applied at paragraph 27 of the PSR, should be granted.

## BACKGROUND

Defendant Tanisha Banks worked for the United States Postal Service as a clerk. She worked at various postal stations, on an as-needed basis, including at the Tolleston Station. PSR ¶ 5, ECF No. 133. As a postal clerk, the Defendant performed various jobs, including closing out the cash drawer. *Id.* ¶ 7. She learned information not commonly known by the typical postal employee. This information included specific details of the procedures for taking cash out of the

post office at the end of the day, such as the color and fabric of the bag used and also that the Tolleston Station might take in as much as $10,000 during the early days of the month. *Id*. ¶¶ 7–8. The Defendant used this information to plan a robbery of the Tolleston Station. The Defendant, along with her two co-defendants, did ultimately rob the Tolleston Station, taking approximately $5,595 and one piece of undelivered priority mail in the process. *Id*. ¶11.

Based on this information, the PSR includes an adjustment to the Defendant's offense level pursuant to Sentencing Guideline § 3B1.3 for the Defendant's role in the offense, because "The defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense; . . . ." PSR ¶ 27. This adjustment adds two levels to the calculation of the Defendant's offense level under the Guidelines.

The Defendant submitted an objection to the adjustment, arguing that she does not qualify as having occupied a position of public or private trust. *See* ECF No. 134. On August 21, 2019, the Court set a schedule for additional briefing to address (i) whether knowledge of procedure alone is a sufficient indicia of the victim's trust and reliance in the Defendant, *see United States v. Bradshaw*, 670 F.3d 768, 770 (7th Cir. 2012) (citing *United States v. Fuchs*, 635 F.3d 929, 935 (7th Cir. 2011)), and (2) whether Application Note 2(A) to § 3B1.3 applies to the Defendant, given the testimony at trial. Aug. 21, 2019 Order, ECF No. 157. The Defendant filed a Memorandum in Response to Court Order of August 21, 2019 [ECF No. 159], and the Government filed a Response to Docket Entry 159 [ECF No. 160].

## LEGAL STANDARD

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), . . . ." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (citing *Nelson* and setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence). This Opinion and Order is intended to resolve the Defendant's objection related to the first step—the calculation of the Guidelines range.

Facts relevant to sentencing should be proved by a preponderance of the evidence. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009); *see also United States v. Krieger*, 628 F.3d 857, 863 (7th Cir. 2010) (advising that sentencing factors that do not increase the defendant's sentence beyond the statutory range may be found by the court at sentencing by a preponderance of the evidence). The Federal Rules of Evidence do not apply to sentencing, *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005), and a court may rely on hearsay as long as the information "has sufficient indicia of reliability to support its probable accuracy," *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (citation and quotation marks omitted). *See also United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) ("Sentencing judges necessarily have 'discretion to draw conclusions about the testimony given and evidence introduced at sentencing,' but 'due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.'") (quoting *England*, 555 F.3d at 622). As such, "[a] district court may rely on facts asserted in the PSR if the PSR is based on sufficiently reliable information." *Rollins*, 544 F.3d at 838. "The defendant bears the burden of proving that the PSR is inaccurate or unreliable," and "if he offers no evidence to question the PSR's accuracy, the court may rely on the PSR." *Id.*

However, it is the Government's burden to prove by a preponderance of the evidence that an enhancement applies. *See United States v. Hines*, 449 F.3d 808, 815 (7th Cir. 2006); *United States v. Foutris*, 966 F.2d 1158, 1160 (7th Cir. 1992).

**ANALYSIS**

The United States Sentencing Commission first introduced an adjustment for the Abuse of Position of Trust or Use of Special Skill in the 1987 version of the United States Sentencing Guidelines. U.S. Sentencing Guidelines Manual § 3B1.3 (U.S. Sentencing Comm'n 1987). Guideline § 3B1.3 stated, "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." *Id*. Although the guideline instructed sentencing courts to hold individuals abusing a position of public or private trust to a higher level of culpability, it provided no definition for courts to use when determining whether a position was one of public or private trust. *See id*.

The Sentencing Commission remedied this issue in 1993, when it amended the Application Notes to § 3B1.3 in order to "[reformulate] the definition of an abuse of position of trust to better distinguish cases warranting [the] enhancement." U.S. Sentencing Guidelines Manual App. C, Vol. 1., amend. 492 (U.S. Sentencing Comm'n 2018). Specifically, the Sentencing Commission defined "Public or Private Trust" in Application Note 1 to § 3B1.3 as:

> [A] position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for

> example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment would not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above described factors.
>
> *Notwithstanding the preceding paragraph, because of the special nature of the United States mail an adjustment for an abuse of a position of trust will apply to **any** employee of the U.S. Postal Service who engages in the theft or destruction of undelivered United States Mail.*

*Id*. (emphasis added). The amendment "narrowed somewhat the definition of an abuse of a position of trust, except in the case of Postal Service employees." Thomas W. Hutchison et. al, Fed. Sent. L. & Prac. § 3B1.3, cmt. 1(c) (2019). Although this particular guideline and its application notes have been amended several times since 1993, Application Note 2(A) to § 3B1.3 still requires that, "[n]otwithstanding Application Note 1 . . . , an adjustment under this guideline shall apply to . . . [a]n employee of the United States Postal Services who engages in the theft or destruction of undelivered United States mail." U.S. Sentencing Guidelines Manual § 3B1.3 application n.2(A) (U.S. Sentencing Comm'n 2018).

The Government argues that Application Note 2(A) provides an alternative method for applying the § 3B1.3 adjustment that is applicable to the Defendant. The Government reasons that the theft of undelivered United States mail by her co-defendant can be attributed to Defendant because the relevant conduct for sentencing includes "reasonably foreseeable acts and omissions of other [*sic*] in furtherance of jointly undertaken criminal activity." Gov't Resp. to Docket Entry 159, p.3, ECF No. 160. The scope of relevant conduct for sentencing is set forth in Guideline § 1B1.3(a)(1)(B), which states that the base offense level and adjustments shall be determined on the basis of,

>    in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>    (i) within the scope of the jointly undertaken criminal activity,
>    (ii) in furtherance of that criminal activity, and
>    (iii) reasonably foreseeable in connection with that criminal activity;
>    that occurred during the commission of the offense of conviction, . . . .

U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (U.S. Sentencing Comm'n 2018); *see also United States v. Sykes*, 774 F.3d 1145 (7th Cir. 2014).

The Defendant acknowledges this standard but contends that Application Note 2(A) is inapplicable because her co-defendant's theft of undelivered mail was not reasonably foreseeable in connection with the undertaken criminal activity. Mem. in Resp. to Ct. Order of Aug. 21, 2019, p. 4, ECF No. 159. The Defendant argues that the theft of mail was not foreseeable because the scheme she developed and the instructions she provided only contemplated the theft of money. *Id*.

The Defendant's argument is contrary to the application of § 1B1.3 regarding relevant conduct. Specifically, "the criminal activity that the defendant agreed to jointly undertake, and the reasonably foreseeable conduct of others in furtherance of that criminal activity, are not necessarily identical." U.S. Sentencing Guidelines Manual § 1B1.3 application n.3(D) (U.S. Sentencing Comm'n 2018). For example, if a defendant assaults and injures a victim during a robbery, her co-defendant will be accountable for the assault even if the co-defendant "had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone" because the outcome was foreseeable due to "the nature of the offense." *Id*. Given the nature and target of the offense in this case—robbing a post office—it was reasonably foreseeable that the co-defendant would steal mail, and the fact that the Defendant had only intended for the co-defendant to steal money (and not mail) is irrelevant.

Turning back to the plain language of § 3B1.3, the Court recognizes that the Defendant's employment as a clerk for the United States Postal Service may be comparable to "an ordinary bank teller or hotel clerk" who would typically be ineligible for a § 3B1.3 adjustment. *See* U.S. Sentencing Guidelines Manual § 3B1.3 cmt. n.1 (U.S. Sentencing Comm'n 2018). However, Guideline § 3B1.3's Application Note 2(A) specifically mandates that the Guideline is to be applied differently to United States Postal Service employees who engage in the theft of United States mail. *Id.* at application n.2(A). The Tenth Circuit Court of Appeals applied the earlier, but substantively-identical, version of Application Note 2(A) (located at the end of Application Note 1 in the 1993 amendment) to find that the adjustment under § 3B1.3 applied to a United States Postal Service clerk convicted of mail theft. *United States v. Hung Viet Ma*, 240 F.3d 895, 896–98 (10th Cir. 2001). Likewise, in *United States v. White*, 241 F. Supp. 2d 902, 904 (C.D. Ill. 2003), the district court held that the same earlier version of Application Note 2(A) applied to a truck driver convicted of theft of mail matter, even though the driver was not an employee of the United States Postal Service.

In the context of misappropriation of postal funds, as opposed to theft of mail matter, several United States Courts of Appeals have held that United States Postal Service window clerks hold a position of trust in relation to the misappropriation of postal funds and applied the § 3B1.3 adjustment. *See, e.g.*, *United States v. Carroll*, 129 F.3d 117, *2–3 (4th Cir. 1997); *United States v. Bottroff*, 124 F.3d 213, *3 (9th Cir. 1997); *United States v. Milligan*, 958 F.2d 345, 346–47 (11th Cir. 1992). In contrast, the Sixth Circuit has held that United States Postal Service window clerks do not occupy a position of trust within the meaning of § 3B1.3 in relation to misappropriation of postal funds. *United States v. Tribble*, 206 F.3d 634, 637 (6th Cir. 2000). The Seventh Circuit has not yet applied Application Note 2(A) nor has it opined on

7

whether a United States Postal Service window clerk occupies a position of trust in relation to the theft of money for purposes of applying § 3B1.3.[1]

In the absence of guidance from the Seventh Circuit, the Court is obligated to follow the plain meaning of the guideline and its application notes and finds that § 3B1.3 applies to the Defendant because, as set forth in Application Note 2(A), she was a postal employee who engaged in the theft of undelivered United States mail. *See United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016) (citing *Stinson v. United States*, 508 U.S. 36, 45 (1993) (explaining that courts must give controlling weight to the sentencing guidelines and their application notes)). Therefore, the Court applies the §3B1.3 adjustment to the Defendant.

## CONCLUSION

For the reasons stated above, the Court OVERRULES the Defendant's objection to paragraph 27 of the PSR.

SO ORDERED on October 15, 2019.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT

---

[1] The Seventh Circuit Court of Appeals has considered § 3B1.3 in other contexts in relation to the United States Postal Service. *See United States v. Emerson*, 128 F.3d 557, 562–63 (7th Cir. 1997) (applying the § 3B1.3 adjustment to a United States Postal Service employee who embezzled money, finding that the employee held a position of trust because he awarded repair jobs and formal construction contracts, which allowed him to formulate and carry out the kickback scheme); *see also United States v. Pulver*, 42 F.3d 1392, 1994 WL 695911 (7th Cir. 1994) (considering an appeal of the district court's application of the § 3B1.3 adjustment to a truck driver who worked for a private company that contracted with the United States Postal Service to pick up and deliver mail and who pleaded guilty to unlawful possession of stolen mail but finding that the objection to the adjustment was moot because the defendant had already served his sentence).