UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 2:18-CR-61-3-TLS-JEM |
| TANISHA A. BANKS | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Tanisha A. Banks's Motion for Reduction in Sentence [ECF No. 201], filed on October 5, 2020. Defendant Banks seeks compassionate release due to the COVID-19 pandemic. For the reasons set forth below, the Defendant's request is DENIED.

**BACKGROUND**

On September 20, 2018, a Superseding Indictment [ECF No. 18] was filed, charging the Defendant with conspiring to rob mail, money or other property of the United States, in violation of 18 U.S.C. § 371 (Count 1) and robbing mail, money or other property of the United States, in violation of 18 U.S.C. § 2114(a) (Count 2). A jury, after a five-day trial, returned a verdict of guilty as to both Counts on January 28, 2019. *See* ECF No. 92. On November 5, 2019, the Court sentenced the Defendant to a total term of 90 months imprisonment to be followed by 2 years of supervised release. *See* ECF No. 176. Although the Defendant was initially released on bond, she has been in custody since March 11, 2019. PSR 2, ECF No. 175. Her current release date is July 29, 2025. *See* Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited Nov. 30, 2020).

The Defendant filed her Motion for Reduction in Sentence [ECF No. 201], on October 5, 2020, asking to be released in light of the COVID-19 pandemic. The Court then issued an Order referring the Defendant's Motion to the Federal Community Defenders Office on October 14,

2020. *See* ECF No. 203. The Federal Community Defenders filed a Notice of Non-Representation [ECF No. 204] the following day. The Government filed its Response [ECF No. 207] on October 26, 2020,[1] and the Defendant filed her Reply [ECF No. 208] on November 16, 2020.

## ANALYSIS

The Defendant asks the Court to modify her sentence pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) based on the threats posed by the COVID-19 pandemic and the conditions at the FCI Waseca facility. The Defendant asks the Court to "reduce [her] term of imprisonment" and to "place [her] immediately on supervised release and add a condition that [she] serve a term of home confinement." Def.'s Mot. 11, ECF No. 201. The Court construes the Defendant's Motion to request that her sentence be reduced to time served. However, as the Defendant currently has an appeal pending before the Seventh Circuit, the Court must first consider whether the Court has jurisdiction to consider the Defendant's Motion. For the reasons set forth below, the Court concludes that it has jurisdiction to consider the Defendant's Motion and denies the Motion.

**A.     The Court Has Jurisdiction to Consider the Defendant's Motion**

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). Indeed, "the notice of appeal transfers jurisdiction to the court of appeals"; therefore, until the Court of

---

[1] The Government filed a duplicate Response [ECF No. 206] on the same day. The Government did not explain why duplicate Responses were filed and the two filings appear to be identical. Therefore, the Court only considers the latest filed Response [ECF No. 207].

appeals issues a mandate, "the case is 'in' the court of appeals, and any action by the district court is a nullity." *Id.* at 194 (citing *United States v. Wells*, 766 F.2d 12, 19 (1st Cir. 1985); *Zaklama v. Mt. Sinai Med. Ctr.*, 906 F.2d 645, 649 (11th Cir. 1990); 16 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, Federal Practice & Procedure § 3949 (1977)). However, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P 37(a); *see also United States v. Cronic*, 466 U.S. 648, 667 n.42 (1984) ("The District Court had jurisdiction to entertain the motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case." (collecting cases)).

The Defendant has filed an appeal that remains pending. *See* ECF No. 178. As such, the Court's authority to rule on the Defendant's Motion may be limited. The Court, however, clearly has the authority to deny the Defendant's Motion on the merits, *see United States v. Law*, No: 2:14-CR-4, 2020 WL 5298853, at *2 (N.D. Ind. Sept. 4, 2020) (denying a defendant's compassionate release request notwithstanding a pending appeal), which, in this case, is the correct disposition.[2] Therefore, the Court concludes that no jurisdictional issue exists as to its consideration and denial of the Defendant's Motion.

---

[2] The Defendant contends that her Motion can be granted based on the Court's holding in *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *1–2 (N.D. Ind. June 17, 2020). In *Barrett*, the Court held that it had jurisdiction to grant or deny the defendant's motion for compassionate release despite the defendant having a pending appeal because the issue on appeal, whether the conditions of the defendant's supervised release were constitutional, was wholly separate from the issue brought before the Court. *Id.* at *2. The facts of *Barrett* are not the facts of this case, as the Defendant has appealed her conviction not the conditions of her supervised release. The Court, however, need not decide whether the issue on appeal is separate from the issues raised in the instant Motion because, regardless of whether the issues are separate, the Court clearly has the authority to deny the Defendant's motion.

**B.      The Defendant's Sentence Should Not Be Reduced Pursuant to 18 U.S.C. § 3582(c)(1)(A)**

Following the imposition of a sentence, a court may not modify the term of imprisonment absent specific circumstances enumerated in 18 U.S.C. § 3582(c). One such circumstance allows a court to grant a defendant compassionate release if certain requirements are met. 18 U.S.C. § 3582(c)(1)(A). The statute provides that

> the court, upon motion of the Director of the Bureau of Prisons, or *upon motion of the defendant* after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . .
> >
> > > and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

*Id.* (emphasis added). Thus, the statute sets out four requirements: exhaustion of administrative remedies, consideration of whether "extraordinary and compelling reasons" warrant a reduction in the term of imprisonment, consideration of the § 3553(a) factors, and consistency with the applicable Sentencing Commission policy statements.

While the statute does not define "extraordinary and compelling reasons," Congress provided:

> The [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t).

4

Pursuant to that authority, the Sentencing Commission Policy Statement on § 3582(c)(1)(A) provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S. Sentencing Guidelines Manual § 1B1.13. The commentary to the Policy Statement then provides that extraordinary and compelling reasons exist under any of these circumstances:

> (A)  Medical Condition of the Defendant.—
>
>   (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>   (ii)  The defendant is—
>
>     (I)  suffering from a serious physical or medical condition,
>
>     (II)  suffering from a serious functional or cognitive impairment, or
>
>     (III)  experiencing deteriorating physical or mental health because of the aging process,
>
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B)  Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the

5

>   aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>   (C) Family Circumstances.
>
>   >   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>   >
>   >   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>   (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1.

Policy Statement § 1B1.13 was effective November 1, 2018, but has not been updated to reflect that the First Step Act amended § 3582(c)(1)(A) in December 2018 to allow a motion to be brought by a defendant and not only by the Bureau of Prisons. *See* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)."). Nevertheless, § 1B1.13 provides guidance on the "extraordinary and compelling reasons" that may warrant a reduction in a term of imprisonment on a motion brought by a defendant. *See United States v. Scott*, 461 F. Supp. 851, 861 (E.D. Wis. May 15, 2020) (agreeing with the majority of courts that a "court in deciding a compassionate release motion is no longer confined to the specific examples enumerated in U.S.S.G. § 1B1.13"); *United States v. McGraw*, No. 2:02-cr-18, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019) ("While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to

6

U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." (collecting cases)).

### 1. *Extraordinary and Compelling Reasons*

The parties agree that the Defendant has exhausted her administrative remedies, Gov't's Resp. 3, ECF No. 207; therefore, the Court must first consider whether the Defendant has established the existence of an extraordinary and compelling reason warranting her release. The Defendant argues that the COVID-19 pandemic is a global health emergency that presents a serious and grave risk to vulnerable inmates such as herself, reasoning that conditions of imprisonment create the ideal environment for the transmission of contagious disease. Although the Court recognizes that COVID-19 poses a general threat to every non-immune person in the country, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also* COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited Nov. 30, 2020). Rather, § 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where she is housed and her personal health conditions. *See United States v. Downing*, No. 18-cr-40037, 2020 WL 2789790, at *2 (C.D. Ill. May 29, 2020) ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that [her] particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and [her] health condition places [her] at significant risk of complications should [she] contract the virus." (quoting *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020))).

The Defendant's Motion argues that she should be released because "FCI Waseca is lacking the necessary manpower & equipment to mitigate the spread of the virus." Def.'s Mot. 4. She alleges that, "with only 600 inmates total here at FCI Waseca, half of the population is currently infected & this number is growing at an exponential rate." *Id.* She also alleges that "the prison received a couple of buses of inmates" and "one bus was mostly comprised of positive covid cases." *Id.* Finally, she alleges that "the warden has not taken the proper steps to ensure [her] safety." *Id.* The Defendant's reply reiterates these arguments. Def.'s Reply 2–4, ECF No. 208. Although the Government does not directly address each of these allegations, it does indicate that COVID-19 has not had significant impacts on FCI Waseca and argues that FCI Waseca "is doing a good job keeping both inmates and staff safe during this pandemic." Gov't's Resp. 11, 16.

The Defendant's description of FCI Waseca is dire; however, her description does not accurately depict the conditions at FCI Waseca. Foremost, FCI Waseca, like all BOP facilities, has strict precautions in place including screening and quarantining all newly arriving detainees, isolating all symptomatic detainees until medically cleared, and issuing and encouraging the use of face masks. *See* BOP Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Nov. 30, 2020). Although FCI Waseca has had 464 cases of COIVD-19 throughout the duration of the pandemic, almost everyone who contracted the virus has recovered and there have been no casualties. *See* COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Nov. 30, 2020). The Bureau of Prisons reports that there are currently only two inmates and four staff members who have tested positive for COVID-19 and have not yet recovered; therefore, it appears that, despite the Defendant's contentions, the institution has few active COVID-19 cases. *See id.* Moreover, it is not clear that the Defendant would be safer from contracting COVID-19 if she were released, as

the pandemic has grown worse nationwide since she filed her Motion. Accordingly, the Defendant's arguments concerning the conditions at FCI Waseca do not favor her release.

The Defendant also argues that she faces particularized risks created by the COVID-19 pandemic because she has been diagnosed with hypertension and asthma and because she suffers from "other medical concerns for which a proper diagnosis has not yet been made," which may include chronic kidney disease, "issues of shortness of breath," "atrophy of the leg muscles, swelling of the calves, numbness, [and] tingling of the feet and toes." Def.'s Mot. 2–3. The Defendant also alleges that the medical staff at FCI Waseca has negligently failed to respond to her medical concerns. *Id.* at 3.

It is generally accepted that certain individuals are at a higher risk of experiencing significant complications if they contract COVID-19. *See* People at Increased Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited Nov. 30, 2020). The Centers for Disease Control and Prevention have indicated that individuals with asthma or hypertension, two conditions the Defendant has been diagnosed with, "**might be at an increased risk** for severe illness from the virus that causes COVID-19." People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 30, 2020).[3] The Court takes seriously the risks associated with contracting COVID-19 and recognizes that certain individuals are at a higher risk of "hospitalization, admission to the ICU, intubation or mechanical ventilation, or death" if they were to contract the virus. *Id.*

---

[3] The Defendant suggests she may have chronic kidney disease; however, she has not been diagnosed with this condition. *See, e.g.*, Gov't's Ex. 5, at 186, ECF No. 207-5 ("Nothing significant with your labs."). As such, only the Defendant's diagnosed conditions will be considered.

Notwithstanding the potential risks identified by the Centers for Disease Control and Prevention, the Defendant has not established the existence of an extraordinary and compelling reason warranting her release. Indeed, courts have generally denied requests for compassionate release from defendants with conditions similar to the Defendant. *See, e.g.*, *Downing*, 2020 WL 2789790, at *1–2; *United States v. Miller*, No. 18-cr-30034, 2020 WL 2093370, at *3 (C.D. Ill. May 1, 2020); *United States v. Shah*, 16-20457, 2020 WL 1934930, at *1–2 (E.D. Mich. Apr. 22, 2020). The Government has submitted approximately two-hundred pages of medical records, which indicate that the Defendant receives adequate medical care and that her conditions are well managed. Furthermore, the Defendant is young and in generally good health, a fact she herself has acknowledged. *See* Gov't's Ex. 5, at 220, ECF No. 207–5. The Defendant's medical conditions, considered in tandem with the conditions at FCI Waseca, do not establish an extraordinary and compelling reason warranting her release; therefore, she is ineligible for a reduction in her term of imprisonment.

### 2. *Consideration of the § 3553(a) Factors*

In the instant case, the § 3553(a) factors also weigh in favor of denying the Defendant's Motion. The Defendant has only served approximately 19 months of her 90-month sentence, which was a sentence significantly below the guideline range. The circumstances of the offense were serious, as the Defendant was involved in an armed robbery targeting her place of employment, the United States Post Office, and victimizing her coworkers. The Defendant reports that she has had no disciplinary incidents and has enrolled in a rehabilitation program. *See* Def.'s Mot. 7–8. Although the Defendant's recent behavior is admirable, it is insufficient to outweigh the nature and circumstances of the underlying offense. Accordingly, the § 3553(a) factors do not warrant a reduced term of imprisonment.

Based on the Defendant's specific circumstances and the above described factors, the Court finds that a reduced term of imprisonment under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) is not warranted. *See Downing*, 2020 WL 2789790, at *1–2 (denying motion for compassionate release, even though the defendant had health issues of diabetes, COPD, anemia, asthma, and high blood pressure, where the defendant was 43 years old, the defendant was housed in a facility with very few COIVD-19 cases, and early release would not be consistent with the § 3553(a) factors); *Shah*, 2020 WL 1934930, at *1–2 (denying motion for compassionate release on the basis that, although the defendant suffers from diabetes and hypertension, there were no cases of COVID-19 in his facility and the Bureau of Prisons is making strict efforts to protect inmates); *United States v. Desage*, 2:13-cr-39, 2020 WL 1904584, at *1–4 (D. Nev. Apr. 17, 2020) (denying relief for a 69-year-old inmate at the outset of 36-month sentence, given his criminal record, even though he is diabetic, because he would be isolated and the Bureau of Prisons is taking steps to keep inmates safe).

## CONCLUSION

For the foregoing reasons, the Court DENIES the relief requested in the Defendant's Motion for Reduction in Sentence [ECF No. 201]. The Motion is denied without prejudice and with leave to refile should there be a change of circumstances involving the Defendant.

SO ORDERED on November 30, 2020.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT