UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:18-CR-61 JD |
| TANISHA A BANKS | |

## OPINION AND ORDER

The Government has submitted a *Santiago* proffer in which it seeks preliminary admission of statements against Defendant Tanisha Banks. The proffer describes the evidence that the Government will present at trial to prove that a conspiracy existed between Defendant Tanisha Banks, James Caffey, and Leeroy Beck. It further describes statements that Mr. Caffey and Mr. Beck made during and in furtherance of the conspiracy that the Government intends to admit in its case against Ms. Banks as non-hearsay. After considering the Government's submission, the Court finds that, if the Government produces the proffered evidence at trial, it will have satisfied the requirements under Federal Rule of Evidence 801(d)(2)(E) to admit the statements as non-hearsay.

An out of court statement offered for the truth of the matter asserted is generally inadmissible hearsay. Fed. R. Evid. 801(c); 802. But under Rule 801(d)(2)(E), a statement that would otherwise be hearsay is not considered hearsay where "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." To admit statements against a defendant under this rule, the Government must demonstrate by a preponderance of the evidence that 1) a conspiracy existed; 2) the defendant and declarant were both members of the conspiracy; and 3) the statements to be admitted were made in the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S.

171, 175 (1987); *United States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010). The Seventh Circuit has endorsed a process for admitting statements under this rule by which a district court may conditionally admit the statements based on a pretrial proffer by the Government, subject to reevaluation at trial based on the evidence actually presented. *United States v. McClellan*, 165 F.3d 535, 553–54 (7th Cir. 1999); *United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir. 1978). In making its determination, the Court must decide "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *Santiago*, 582 F.2d at 1143. The Court may consider the proffered statements themselves as evidence of both the existence of a conspiracy and the defendant's participation in the conspiracy, but the contents of the statements must also be corroborated by at least some supporting evidence. *United States v. Harris*, 585 F.3d 394, 398–99 (7th Cir. 2009). Such evidence may be either direct or circumstantial. *See United States v. Johnson*, 592 F.3d 749, 754–55 (7th Cir. 2010).

Here, the Government seeks a conditional ruling admitting Mr. Caffey's and Mr. Beck's statements between August 1, 2017 and August 4, 2017 as they were planning, executing, and wrapping up the alleged conspiracy with Ms. Banks to rob the Tolleston Post Office. (DE 230 at 9–12.) The Government only focuses on admitting Mr. Caffey's and Mr. Beck's statements under Rule 801(d)(2)(E) and not Ms. Banks's because her statements during the course of the conspiracy would be admissible as statements of an opposing party under Rule 801(d)(2)(A). The Court conducts its preliminary analysis of the admissibility of Mr. Caffey's and Mr. Beck's statements in two parts. First, it considers whether the Government has presented sufficient evidence for the Court to conclude that Ms. Banks, Mr. Caffey, and Mr. Beck were engaged in a

conspiracy. If they were, the Court then considers whether the statements the Government seeks to admit were made during and in furtherance of the conspiracy.

A large portion of the testimonial evidence the Government expects to elicit at trial to show a conspiracy existed will come from Mr. Beck. Ms. Banks has objected to allowing the Government to rely on Mr. Beck's testimony, arguing that it became "abundantly clear" while Mr. Beck was testifying at the previous trial that his testimony related to Ms. Banks "is entirely fabricated" and that Mr. Beck cannot testify to the necessary specifics of the relevant conversations, including when and where they took place. (DE 248 at 2.) The Court notes Ms. Banks's concerns but nonetheless considers Mr. Beck's anticipated testimony as part of the current analysis. Not only does the Court find that Ms. Banks has failed to show Mr. Beck's proffered testimony is so obviously flawed that it should not be considered, but the Court also notes that considering Mr. Beck's testimony at this time is not fatal because a favorable ruling now will only result in conditional admittance and still require the Government to meet its burden by presenting Mr. Beck's actual testimony before a final ruling at trial.

The Government expects Mr. Beck will testify about statements made over the entire course of the alleged conspiracy. For example, he is expected to testify that on August 1, Mr. Caffey, in the presence of Ms. Banks, asked him if he wanted to commit a robbery and explained that the robbery would be of the Tolleston Post Office. He is also expected to testify that Mr. Caffey and Ms. Banks shared details of the planned robbery during that interaction, including what day would be best, what time of day would be best, why the post office was a good target, how Mr. Caffey and Ms. Banks needed the money for bills, and how Mr. Beck could use Mr. Caffey's firearm and car to commit the robbery. While Mr. Caffey appears to have been the one primarily talking with Mr. Beck during the interaction, the Government expects Mr. Beck to

testify that Ms. Banks discussed important aspects of the planned robbery like that closing time was the best time for the robbery, that Mr. Beck would find the money in white bags, that there were no cameras on the post office, and that Mr. Beck had to be careful not to drop the gun Mr. Caffey was allowing Mr. Beck to use because it could be traced back to Mr. Caffey. (DE 230 at 9–10.) Mr. Beck is also expected to testify to his actually committing the robbery two days later on August 3, to his having discussions with Mr. Caffey on the day of the robbery that included more instructions about how Mr. Beck should commit the robbery, and to having met with Mr. Caffey to distribute the robbery proceeds afterward.

The Government also expects to rely on testimony from non-conspirator Ka'Shinda Russell, who was in the car with Mr. Beck and Mr. Caffey on the day of the robbery and to whom Mr. Beck talked about the planned robbery after the August 1 meeting with Mr. Caffey and Ms. Banks. Ms. Russell is expected to testify that, on August 3, Mr. Caffey relayed to Mr. Beck his and Ms. Banks's concern about Mr. Beck not dropping the firearm during the robbery, how the firearm was just to scare the postal employees, and how much money they could expect to get from the robbery. The Government also raised the possibility that Ms. Russell will testify about what Mr. Beck told her Mr. Caffey and Ms. Banks said at the August 1 meeting Ms. Russell did not attend (*Id.* at 12) as well as that Mr. Beck told her that Mr. Caffey had told Mr. Beck on August 4 that he had taken care of the clothes Mr. Beck wore during the robbery (*Id.* at 11). The Court addresses that potential double hearsay testimony separately in this order.

In addition to the expected statements of co-conspirators relayed through Mr. Beck and Ms. Russell, the Government also expects to submit independent evidence to show the existence of a conspiracy. That evidence includes that Mr. Banks and Mr. Caffey owned a Dodge Charger, the model of car used in the robbery, that Mr. Caffey had a firearm registered in his name that

4

matched the description Mr. Beck and the robbery victims gave of the firearm used in the robbery, that Ms. Banks worked at the Tolleston Post Office and through that work was familiar with the details of the post office's routine and employees, that Ms. Banks sought to get the full schedule of who was working at the post office for the week of the robbery, that Ms. Banks and Mr. Caffey were having financial problems, and that Mr. Caffey made post-arrest statements indicating an awareness of the robbery and a concern about who might have witnessed it. (*Id.* at 13.)

After considering all this evidence, the Court concludes that the Government has provided the Court a sufficient basis to conclude that Ms. Banks, Mr. Caffey, and Mr. Beck were each more likely than not working together with the joint purpose of robbing the Tolleston Post Office, which is the essence of a conspiracy. *See United States v. Speed*, 656 F.3d 714, 717 (7th Cir. 2011) (explaining that to establish a conspiracy, the Government must demonstrate an understanding, either explicit or implicit, among co-conspirators to work together to achieve an illegal goal). Accordingly, the Court finds preliminarily that the proffered evidence will be sufficient to permit a finding by a preponderance of the evidence that a conspiracy existed between Ms. Banks, Mr. Caffey, and Mr. Beck.

Having ascertained the existence of a conspiracy between the three individuals, the Court now moves to consider whether the statements the Government intends to introduce through Rule 801(d)(2)(E) were made during and in furtherance of the conspiracy. The standard to be applied "is whether some reasonable basis exists for concluding that the statement furthered the conspiracy." *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987). A statement is "in furtherance of" a conspiracy when it promotes the conspiracy's objectives. *United States v. Gajo*, 290 F.3d 922, 929 (7th Cir. 2002). Under this standard, a statement is admissible as in

furtherance of the conspiracy even if it is susceptible to alternate interpretations, and "need not have been exclusively, or even primarily, made to further the conspiracy." *Shoffner*, 826 F.2d at 628.

Here, the Government's proffer does not list every statement from Mr. Caffey and Mr. Beck that the Government will seek to admit during trial but instead focuses more on conversations as a whole at various points in time with the expectation that it will use representative statements from each. Those conversations can most easily be divided into three time periods: before, during, and after the robbery. The Court thus analyzes Mr. Caffey's and Mr. Beck's statements during each time period to determine whether they were during and in furtherance of the conspiracy. The Court also notes that the Government may be able to admit several of the statements covered in the proffer under different hearsay exceptions or for non-hearsay reasons unrelated to Rule 801(d)(2)(E).

Mr. Beck's and Mr. Caffey's statements on August 1, while they were meeting with Ms. Banks to allegedly plan the robbery, easily qualify as statements during and in furtherance of a conspiracy. The conversation represents the time when Ms. Banks and Mr. Caffey took their idea for a robbery to Mr. Beck, explained it to him, and got him involved, thus laying the foundation for the conspiracy and making sure everyone involved knew the plan. Because the statements within that discussion constituted planning of co-conspirator exploits and sharing of information to help co-conspirators perform their roles, the statements qualify as occurring during and being in furtherance of a conspiracy. *See United States v. Van Daal Wyk*, 840 F.2d 494, 499 (7th Cir. 1988) (information flow to help perform a role); *United States v. Molt*, 772 F.2d 366, 368–69 (7th Cir. 1985) (conversations planning exploits). The Court thus conditionally admits these statements made during the planning of the conspiracy.

Mr. Caffey's and Mr. Beck's statements immediately preceding and during the robbery on August 3 similarly will be conditionally admitted. These statements involve further last-minute instructions from Mr. Caffey to Mr. Beck about how to commit the robbery and how to make sure he was not caught as well as Mr. Beck's statements while he was committing the robbery. Those statements, like the statements from the planning session discussed above, were central to accomplishing the conspiracy's goal and for that reason there is clearly a reasonable basis to conclude that the statements furthered the conspiracy by promoting its objectives. *See Shoffner*, 826 F.2d at 628; *Gajo*, 290 F.3d at 929. The Court thus conditionally admits Mr. Caffey's and Mr. Beck's statements made immediately before and during the robbery.

Finally, the Court considers the conversations between Mr. Caffey and Mr. Beck in the aftermath of the robbery, when they discussed dividing the money and disposing of the clothes Mr. Beck wore while committing the robbery. Mr. Caffey's and Mr. Beck's statements about dividing the money occurred on August 3, seemingly right after the robbery. (DE 230 at 10–11.) That discussion was a continuation of the conspiracy that Mr. Caffey, Mr. Beck, and Ms. Banks allegedly planned on August 1 because it involved the final steps of getting the three participants their share of proceeds, in part to allow Mr. Caffey and Ms. Banks to deal with the financial trouble they gave as a motive when drawing Mr. Beck into the conspiracy. *See, e.g.*, *United States v. Fitzgerald*, 579 F.2d 1014, 1016 (7th Cir. 1978) (describing division of the profits from a conspiracy as evidence of the conspiracy); *United States v. Polchan*, 2010 U.S. Dist. LEXIS 105117, at *13 (N.D. Ill. Oct. 1, 2010). The Court thus conditionally admits the statements made while dividing the money.

Mr. Caffey's statement about disposing of Mr. Beck's clothing is different, however. Mr. Caffey allegedly made the statement the day after the robbery, at which point it is unclear

7

whether the conspiracy was still ongoing. The duration of a conspiracy depends upon the scope of the agreement entered into by its members and any determination that there has been an agreement to conceal as part of the conspiracy must rest on more than simply circumstantial evidence showing that the conspirators took care to cover up their crime in order to escape punishment. *United States v. Mackey*, 571 F.2d 376, 383 (7th Cir. 1978) (citing *Gunewald v. United States*, 353 U.S. 391, 402 (1957)); *see Gajo*, 290 F.3d at 928. The Government has not presented enough evidence of a prior agreement to conceal for the Court to determine that Mr. Caffey's action and statement were anything more than an act he took simply as part of taking care to cover up the crime to escape punishment. The Court thus does not admit Mr. Caffey's statement about disposing of Mr. Beck's clothes or any other post-robbery concealment statements at this time.

Before concluding, the Court finds it necessary to address the admissibility of the testimony the Government expects from non-conspirator Ms. Russell. The Court makes clear that, consistent with the rest of this order, Ms. Russell's expected testimony about the conversations between Mr. Caffey and Mr. Beck that she heard firsthand during the admitted time periods previously described is conditionally admitted. But the Government has also indicated that it may ask Ms. Russell to testify about what Mr. Beck told her that Mr. Caffey told him outside of Ms. Russell's presence, which presents a situation of double hearsay. (DE 230 at 12, 14.) When the Government first raised that possibility, it stated in a footnote that it expected the statements to be admissible as prior consistent statements under Rule 801(d)(1)(B)(i) or (ii), which can be addressed during trial. (*Id.* at 12 n.1.) The Government went on, however, to argue that "Beck's relating of the conversation with Banks and Caffey to Kashinda Russell was to allay her fears about the outcome of the robbery and to calm her down about the robbery occurring,"

which suggests the Government may attempt to have Ms. Russell present that double hearsay testimony as statements of co-conspirators instead of just to show a prior consistent statement by Mr. Beck. The Court does not find that the Government has adequately shown that Mr. Beck's relaying of Mr. Caffey's prior statement to Ms. Russell was in furtherance of the underlying conspiracy and thus does not conditionally admit any anticipated double hearsay statements by Ms. Russell under Rule 801(d)(2)(E) at this time. The Government, however, may lay a proper foundation for admittance of that testimony under Rule 801(d)(2)(E) during trial if it believes it necessary.

Accordingly, the Court finds that the Government has shown by a preponderance of the evidence that the conspiracy described by the Government existed between Ms. Banks, Mr. Caffey, and Mr. Beck. It has also shown that the conversations and statements the Court conditionally admitted above were made during the conspiracy and in furtherance of it. Following the procedures suggested in *Santiago*, 582 F.2d 1128, the statements are conditionally admitted pursuant to Rule 801(d)(2)(E) subject to a final ruling before the close of the Government's case once the Court has seen the evidence. The Government is encouraged to lay foundation for admission of the statements before seeking to admit the statements themselves against Ms. Banks.

SO ORDERED.

ENTERED: June 11, 2021

                /s/ JON E. DEGUILIO
                Chief Judge
                United States District Court